UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLOR STREET LLC,<br><br>              Plaintiff,<br><br>v.<br><br>AUDERE, INC., *et al.*,<br><br>              Defendants. | Civil Action No. 22-2267 (JXN) (JSA)<br><br>*consolidated with* |
| TRACY RODGERS, *et al.*,<br><br>              Plaintiffs,<br><br>v.<br><br>COLOR STREET LLC, *et al.*,<br><br>              Defendants. | **Civil Action No. 23-3943 (JXN) (MAH)**<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court by way of Plaintiffs Tracy Rodgers' ("Rogers") and Robert McCauley's ("McCauley") (collectively, "Plaintiffs") motion for a temporary restraining order and preliminary injunction staying or otherwise enjoining arbitration. (ECF No. 33.) The Court has considered the submissions made in support of and in opposition to the motion and heard oral argument on September 19, 2023. For the reasons set forth below, Plaintiffs' motion for preliminary injunction is **DENIED**.

**I.    BACKGROUND**[1]

The instant matter is the second-filed litigation pending before this Court based on a similar set of facts and between substantially the same parties stemming from a business relationship

---

[1] The background is drawn from the parties' papers and from prior Opinions, *see*, e.g., *Rodgers, et al. v. Color Street LLC, et al.*, Civ. No. 23-3943 (JXN) (JSA), Memorandum Decision and Order, ECF No. 29.

between Plaintiffs and Defendant Color Street Inc. ("Color Street" or "Defendant"). (*See Color Street LLC v. Audere, Inc., et al.*, Civ. No. 22-2267 (JXN) (JSA) ("*Color Street I*"), *and Rodgers et al. v. Color Street LLC, et al.*, Civ. No. 23-3943 (JXN) (JSA) ("*Color Street II*").)

Defendant Color Street is a New Jersey-based company that specializes in beauty goods and sells consumer products, most notably fingernail strips, through a network of "Independent Stylists." (Compl. ¶¶ 3, 11, 13, ECF No. 1.) Color Street's corporate procedures require that all persons who apply to join Color Street as Independent Stylists agree to the terms of Color Street's Independent Stylist Agreement ("ISA") and Color Street's Policies and Procedures ("Policies and Procedures"). (Affidavit of Glenn Mills ("Mills Aff.") ¶ 3, *Color Street I*, ECF No 43-2.)

Plaintiffs Rodgers and McCauley are Idaho residents and former Independent Stylists in the Color Street network starting in 2017 and 2019, respectively. (Compl. ¶¶ 15, 21.) Rodgers was one of the first Independent Stylists to sign up with Color Street. (*See* Declaration of Tracey Rodgers ("Rodgers Decl.") ¶ 5-6, ECF No. 33-4.) According to Rodgers, she signed up in April 2017 "by filling out a form online." (ECF No. 33-1 at 11.) Rodgers asserts that "[she] was not required to and did not 'click' any electronic boxes agreeing to any terms or conditions governing [her] role as an Independent Stylist for Color Street or otherwise." (Rodgers Decl. ¶ 7.)

Color Street maintains that when Rodgers applied to join Color Street in 2017, she was required to, and did, check a box online containing the following acknowledgment as part of that process:

> My typed signature below indicates that I have read the Terms of Agreement, and that I willingly accept all of the Terms and Conditions of this agreement. . . . By checking here, I acknowledge that I have read and understand the terms and conditions of the Terms of Agreement…

2

(Mills Aff. ¶ 10; Ex. 2, 2017 Independent Stylist Agreement ("2017 ISA"), ECF No. 33-3.)[2]

The 2017 ISA between Rodgers and Color Street contains the following New Jersey choice of law and forum selection clause:

> 14. This agreement shall be governed by the laws of the state of New Jersey, and all claims, disputes and other matters between the parties of this agreement shall be brought in the Passaic County Superior Court in Paterson, New Jersey or in the U.S. District Court, in Newark, New Jersey.

(2017 ISA ¶ 14.) The 2017 ISA incorporates Color Street's Policies and Procedures (*see* Mills Aff., Ex. 4, 2017 Policies and Procedures) and acknowledges that Independent Stylists are bound by future amendments and modifications as follows:

> 2. I shall become a Company Independent Stylist upon acceptance of this application by the Company. As an Independent Stylist, I shall have the right to sell the products and services offered by the Company in accordance with the Company's marketing program and statement of policy, *which may be amended and changed from time to time*.
>
> 3. Upon notification to Independent Stylists, *the Company, at its discretion, may amend the marketing plan, product pricing, statement of policy, etc*.
>
> 4. I have carefully reviewed *the Company's marketing plan, rules and regulations, and policies and procedures, and acknowledge that they are incorporated as part of this Agreement in their present form and as modified from time to time by the Company*.
>
> …
>
> 15. This Agreement constitutes the entire agreement between the Independent Stylist and Company and no other additional promises, representations, guaranties [sic] or agreements of any kind shall be valid *unless in writing*.

(*Id*. ¶¶ 2-4, 15) (emphasis added.) Further, the version of Color Street's Policies and Procedures in effect when Rodgers signed up to become an Independent Stylist also recognized that Color Street could amend its ISA and Policies and Procedures going forward and that Independent Stylists would be bound by such amendments upon being notified of the same:

---

[2] Color Street attached a copy of the page confirming Rodgers' agreement to the terms and conditions of the 2017 ISA. (*See* Mills Decl. ¶ 11; Ex. 1.) Color Street asserts that this page can only be generated if Rodgers checked on the acknowledgment indicating her acceptance of the terms of the Agreement. (*Id*.)

> 39. This statement of policies and procedures is incorporated into the IS agreement and constitutes the entire agreement of the parties regarding their business relationship.
>
> 40. *The Company expressly reserves the right to alter or amend* prices, Rules and Regulations, *Policies and Procedures*, product availability and compensation plan. *Upon notification, in writing, such amendments are automatically incorporated as part of the agreement between the Company and the [Independent Stylist].* Company communication of changes may include, but shall not be limited to mail, email, fax, posting on the Company website, publication in company newsletters or magazines, etc.

(*Id*. ¶¶ 39–40.)

In 2019, Color Street amended its ISA (the "2019 ISA") and Policies and Procedures. (*See* Mills Aff., Ex. 6 2019 ISA; Ex. 8 2019 Policies and Procedures.) The 2019 ISA contained a choice of law clause (New Jersey) (2019 ISA ¶ 18), provided for binding arbitration before the American Arbitration Association ("AAA") (2019 ISA ¶ 19) and addressed future amendments to Color Street's ISA, including its Policies and Procedures as follows:

> **25. Amendments.** I understand that Color Street may amend this Agreement, including the Policies and Procedures and Compensation Plan, at any time as Color Street deems appropriate. Amendments shall be effective thirty (30) days after notice of an amendment is posted on the Color Street website or communicated to Independent Stylists through official Company publications. Amendments shall not apply retroactively prior to the effective date of the amendment. All amendments are binding on all Independent Stylists and my continuation as an Independent Stylist after the effective date of any amendment constitutes my acceptance of such amendment. This Agreement, including the Policies and Procedures and Compensation Plan, in their current form and as may be amended supersedes all prior communications, understandings and agreements between Independent Stylist and Color Street and constitutes the entire agreement between the Independent Stylist and Color Street. To the extent that the provisions of any documents incorporated by reference into this Agreement conflict with these terms and conditions, these terms and conditions shall control. No waiver of any of the provisions of any Agreement shall constitute a waiver of any other provision.

(2019 ISA ¶ 25.) Further, Color Street's updated Policies and Procedures provided that Independent Stylists were bound by the dispute resolution terms and conditions in the ISA, i.e., the clause mandating arbitration before the AAA in New Jersey. (*See* Mills Aff., Ex. 8, Policies

4

and Procedures at ¶ 7r ("If any dispute regarding these Policies and Procedures arises, it will be resolved in accordance to the terms and conditions of the Independent Stylist Agreement.").

On November 16, 2019, McCauley, Rodger's "partner," joined Color Street as an Independent Stylist. (*See id.,* Ex. 5; Declaration of Robert McCauley ("McCauley Decl.") ¶¶ 4, 6, ECF No. 33-5.) McCauley states that Rodgers assisted him in signing up to become a Color Street Independent Stylist. (McCauley Decl. ¶ 6.) He claims that "[he] do[es] not recall executing any contracts or other written agreements" or "being required to 'click' on any electronic boxes agreeing to any terms or conditions to become an Independent Stylist with Color Street." (McCauley Decl. ¶¶ 7, 8.)[3] When McCauley joined Color Street in November 2019, the 2019 ISA was in effect. (*See id*., Ex. 10, Email dated 10/19/2019.)

After McCauley joined Color Street, the ISA and Policies and Procedures were amended once again. In 2021, Color Street updated its ISA (the "2021 ISA") and Policies and Procedures. (*See* Mills Aff., Ex. 7, 2021 ISA, Ex. 9 2021 Policies and Procedures.) The 2021 ISA contains a choice of law and venue clause[4] and an arbitration clause which provides, in relevant part, that "**THE PARTIES MUTUALLY AGREE THAT ANY CLAIM OR DISPUTE . . . ARISING FROM OR RELATING TO THIS AGREEMENT . . . SHALL BE RESOLVED BY BINDING ARBITRATION. . . .**" (2021 ISA ¶ 18) (emphasis in original). Additionally, paragraph

---

[3] Attached as Exhibit 5 to Color Street's opposition is a copy of McCauley's acknowledgment of the Terms and Conditions of Color Street's 2019 ISA and Policies and Procedures. (*See* Mills Aff., Ex. 5.)

[4] Paragraph 17 of the 2021 ISA states as follows:

> 17. Governing Laws & Venue. This Agreement will be governed by and construed in accordance with the laws of the State of New Jersey without regard to principles of conflicts of laws. The Parties agree that the Superior Court of New Jersey in Bergen County, New Jersey or United States District Court of New Jersey, Newark Vicinage shall be the sole and exclusive venue and forum for any lawsuit or court proceeding between the Parties and each Party consents to personal jurisdiction in such courts and waive any and all objections to venue, jurisdiction or forum that might otherwise be available to either Party.

(2021 ISA ¶ 17.)

22 of the 2021 ISA states that disputes not otherwise subject to the arbitration clause, specifically those seeking injunctive relief which "may not otherwise be available to either party in arbitration," may be litigated in a court of competent jurisdiction in New Jersey. (2021 ISA ¶ 22.)[5]

While McCauley was not engaged in actively selling Color Street's products, Rodgers became a "high-ranking" Independent Stylist during her tenure with Color Street. (Compl. ¶ 22; ECF No. 29 at 3.) Throughout her time with the company, Rodgers participated in many Color Street conferences and business and leadership meetings. (*Id.*) Nonetheless, the business relationship between Rodgers and Color Street deteriorated, and on February 11, 2022, she resigned as an Independent Stylist with Color Street. (*Id.*; Rodgers Decl. ¶ 9.) McCauley also left shortly after that, on March 2, 2022. (McCauley Decl. ¶ 9.)

At some point, Rodgers, McCauley, and two others launched their own competing company, Audere Inc. ("Audere"). (ECF No. 29 at 3.) Color Street contends that Plaintiffs were still affiliated with Color Street when they started Audere. (*Id.*)

### Color Street Initiates Arbitration and Litigation Proceedings in New Jersey

On February 28, 2022, Color Street commenced an arbitration action with the American Arbitration Association ("AAA") against Rodgers, which it subsequently amended on March 22, 2022, to also name McCauley and non-party Jessica Matney ("Matney") as additional Respondents (*Color Street LLC v. Tracy Rodgers, Robert McCauley, and Jessica Matney*, AAA Case No. 012200008471 (the "Arbitration"). (Compl. ¶ 77; ECF No. 33 ¶ 2.) In the Arbitration, Color Street

---

[5] Paragraph 22 of the ISA provides:

> **22. Court Actions.** Notwithstanding the Parties' agreement to arbitrate, either Party may bring an action in the Superior Court of New Jersey in Bergen County, New Jersey or United States District Court of New Jersey, Newark Vicinage to obtain a restraining order, temporary or permanent injunction, or other equitable relief that may not otherwise be available to either party in arbitration. The Parties may also seek judicial enforcement of an arbitration award in any court of competent jurisdiction.

(2021 ISA ¶ 22.)

alleges claims against Plaintiffs for (i) breach of contract; (ii) breach of the implied duty of good faith and fair dealing; (iii) misappropriation of confidential information; (iv) violation of the New Jersey Trade Secrets Act; (v) unjust enrichment; (vi) tortious interference; (vii) independent contractor raiding/tortious interference; (viii) tortious interference; (ix) negligent misrepresentation; (x) fraud; (xi) unfair competition; and (xii) injunctive relief. (ECF No. 33 ¶ 2; s*ee also* Amended Demand for Arbitration and Statement of Claim ("Am. Demand"), ECF No. 33-2.)

On March 15, 2022, Color Street filed *Color Street LLC v. Audere, Inc. and Salvatore Ferraro*, Civ. No. 22-02267 (JXN) (JSA) ("*Color Street I*") in New Jersey state court. (*See Color Street I*, Compl., ECF No. 1-1.) The defendants in *Color Street I* removed the matter to this Court on April 18, 2022. (*Color Street I*, Notice of Removal, ECF No. 1.) In addition to seeking injunctive relief, Color Street asserted claims for Tortious Interference, Independent Contractor Raiding, violation of the New Jersey Trade Secrets Act, Misappropriation of Confidential Information, Unfair Competition, and Unjust Enrichment. (*Color Street I*, Compl., ¶¶ 82-125.)

### **Plaintiffs' Lawsuit in the District of Idaho**

On September 15, 2022, Plaintiffs filed a three-count complaint in the District Court of Idaho seeking a declaratory judgment holding that they are not bound by the ISA and, therefore, not obligated to participate in the Arbitration. (*See* Compl. ¶¶ 86–95.)  Plaintiffs also assert defamation and tortious interference claims against Defendants Color Street and Color Street's founder and CEO, Fa Young Park ("Park"), Vice President of Field Development, Lisa Schmidt ("Schmidt"), and Senior Director of Sales Angela Polsgrove ("Polsgrove"), (collectively "Defendants"), stemming from alleged defamatory comments made about Rodgers and McCauley following their departure from Color Street. (*See* Compl. ¶¶ 96 - 124.)

On November 21, 2022, Plaintiffs filed a motion to stay arbitration or, in the alternative, for injunctive relief. (ECF No. 16.) Color Street filed a motion to dismiss or transfer venue that same day. (ECF No. 17.) On January 5, 2023, Color Street filed an Opposition to Plaintiffs' motion to stay or for injunctive relief. (ECF No. 22.) Plaintiffs claim that in their opposition, Color Street produced, for the first time, the 2017 ISA, the terms of which it claims Rodgers and Matney agreed to when they enrolled with Color Street in 2017. (ECF No. 33-1 ¶ 10; 2017 ISA.) Plaintiffs contend that the 2017 ISA does not contain an arbitration clause. (ECF No. 33 ¶ 11.) On March 30, 2023, Plaintiffs filed an Emergent motion to stay arbitration. (ECF No. 27.)

On July 19, 2023, the Honorable David C. Nye, U.S.D.J., of the U.S. District Court of Idaho ("Judge Nye"), granted Color Street's motion to transfer. (*See* ECF No. 29.) Judge Nye concluded, among other things, that "transfer [was] within the interests of justice . . . as well as the first-to-file rule, and the significance of the declaratory judgment claim and its close relation to [*Color Street I*]." (ECF No. 29 at 19.) Plaintiffs' motion to stay arbitration or, in the alternative, for injunctive relief (ECF Nos. 16) and emergent motion to stay arbitration (ECF No. 27) were denied as moot. (ECF No. 29 at 19.) On July 24, 2023, the case was transferred to this Court. (*See Rodgers et al. v. Color Street LLC, et al.*, Civ. No. 23-3943 (JXN) (JSA) ("*Color Street II*"), ECF No. 30.)

### *Color Street I* and *Color Street II* are Consolidated

On August 21, 2023, the Honorable Jessica S. Allen, U.S.M.J. ("Judge Allen"), issued an Order consolidating *Color Street I* and *Color Street II* "for all purposes." (ECF No. 37.) In the Order, Judge Allen concluded that consolidation is appropriate "for a multitude of reasons," including that

> both cases are substantially similar in that they raise overlapping and related issues and legal claims stemming from a business relationship between Color Street and

two of Audere's officers and owners; that there is substantial similarity of parties; and that the key legal questions in both cases turn on the viability and enforcement of the ISA.

(*Id*. at 4.)

On August 7, 2023, Plaintiffs filed the instant motion for a temporary restraining order and preliminary injunction staying or otherwise enjoining the arbitration currently pending before the AAA. (*See* ECF No. 33.) Defendants opposed Plaintiffs' motion (*see Color Street I*, ECF No. 43), and Plaintiffs replied in further support (*see Color Street I*, ECF No. 44).

On September 1, 2023, this Court entered a Temporary Restraining Order staying the Arbitration proceedings before the AAA to "preserve the status quo" pending the Court's decision on the merits of Plaintiffs' motion for a preliminary injunction. (*See* ECF No. 39.) On September 19, 2023, the Court heard oral argument from the parties on Plaintiffs' motion. (*See* ECF No. 55.)

## II. LEGAL STANDARD

### A. Preliminary injunction

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). To obtain a temporary restraining order or preliminary injunction, the moving party must show:

> (1) a reasonable probability of eventual success in the litigation,[6] and (2) that it will be irreparably injured ... if relief is not granted .... [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

---

[6] In this context, "eventual success" means a party's success in compelling or resisting an arbitral forum.

*Reilly v. Cty. of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). The movant bears the burden of establishing "the threshold for the first two 'most critical' factors.... If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*. at 179. The decision to grant or deny a preliminary injunction is within the Court's discretion. *See Am. Express Travel Related Servs., Inc. v. Sidamon–Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Moreover, the primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994).

## B. Standards to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, creates a strong federal policy in favor of arbitration. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999) (noting that FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under New Jersey law, "the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability." *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 304 (2016); *see also N.J. Reg'l Council of Carpenters v. Jayeff Constr. Corp.*, 495 F. App'x 230, 232 (3d Cir. 2012) ("[T]he issue is whether a contract to arbitrate was ever entered into by the parties. In such a case, the court—not the arbitrator—has the power to adjudicate the issue."). "Silence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability." *Id.* at 1178.

10

To succeed on a motion to compel arbitration, the party seeking arbitration must establish that "(1) a valid arbitration agreement exists between the parties and (2) the dispute before it falls within the scope of the agreement." *Doyle v. Ad Astra Recovery Servs., Inc.*, No. 17-cv-05233, 2018 WL 1169121, at *2 (D.N.J. Mar. 6, 2018) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 525 (3d Cir. 2009)). Depending on the circumstances of the case, courts will analyze those questions either through the lens of a motion to dismiss standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure or a motion for summary judgment standard under Rule 56.

The motion to dismiss standard applies to motions to compel arbitration "[w]here the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or ... documents relied upon in the complaint)." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citation omitted); *see Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 115 (3d Cir. 2017). However, where the complaint and supporting documents are unclear as to an agreement to arbitrate, or where a plaintiff responds to a motion to compel with additional facts sufficient to place the issue of arbitrability "in issue," then the parties should be entitled to discovery. After limited discovery, a court may then "entertain a renewed motion to compel arbitration" and should review such a motion under the summary judgment standard. *Beacon Sales Acquisition, Inc. v. Bd. of Trustees of Teamsters Indus. Emps. Pension Fund*, 425 F. Supp. 3d 377, 386 (D.N.J. 2019)

### III.   DISCUSSION

The principal issue on Plaintiffs' motion for a preliminary injunction is whether Plaintiffs are bound to arbitrate based on Color Street's ISAs and Policies and Procedures, including the arbitration provisions therein.

### A. Likelihood of Success on the Merits

To satisfy the first prong of the preliminary injunction inquiry, Plaintiffs must demonstrate a likelihood of success on their contention that they are not required to arbitrate. *See SK & F. Co. v. Premo Pharm. Labs.*, Inc., 625 F.2d 1055, 1066 (3d Cir. 1980). That standard requires "a reasonable probability, [but] not the certainty, of success on the merits." *Id.*

Under New Jersey law, the requisite elements of a contract are offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms. *See Noble v. Samsung Elecs. Am., Inc.,* 682 F. App'x 113, 116 (3d Cir. 2017). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." *Atalese*, 219 N.J. at 442. This principle is especially important in arbitration cases "because arbitration involves a waiver of the right to pursue a case in a judicial forum," and courts will therefore "take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." *Id.* (internal quotations omitted). It should be noted, however, that "[n]o particular form of words is necessary to" establish a waiver of rights. *Id.* Instead, a consumer contract "will pass muster when phrased in plain language that is understandable to the reasonable consumer." *Id.*; *see also Beture v. Samsung Elecs. Am., Inc.*, No. 17-cv-5757, 2018 WL 4621586, at *5 (D.N.J. July 18, 2018). Further, "[o]nce there is reasonable notice, a party is bound by those terms, even if he failed to read them." *Noble*, 682 F. App'x at 116 (citations omitted). To ensure reasonable notice, the agreement must "appear to be a contract," and the terms must be "called to the attention of the recipient." *Id.* (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002)).

Plaintiffs argue they are not bound by the arbitration clause Color Street seeks to enforce against them. (ECF No. 33-1 at 15.) Plaintiffs maintain that they do not recall assenting to or

otherwise agreeing to the terms of the 2021 ISA containing the arbitration clause by "clicking" their agreement to it or otherwise. (Rodgers Decl., ¶¶ 7-8, 14-18; McCauley Decl., ¶¶ 7-8, 12-18.) First, as to Rodgers, Plaintiffs state that when she signed up "[t]o become an Independent Stylist with Color Street, [Rodgers] was not required to and did not "click" any electronic boxes agreeing to any terms or conditions governing my role as an Independent Stylist for Color Street or otherwise." (Rodgers Decl. ¶ 7.) Plaintiffs contend that the 2017 ISA that Rodgers is alleged to have assented to when she became an Independent Stylist did not contain an arbitration clause and instead provided for jurisdiction and venue in the state or federal courts in New Jersey. (ECF No. 33-1 at 15-16; 2017 ISA ¶ 15.)[7] While Plaintiffs argue that paragraph 14 of the 2017 ISA does not permit Color Street to amend or otherwise modify the terms of that agreement unilaterally (ECF No. 33-1 at 16-17), they acknowledge that the 2017 ISA did allow Color Street to amend or modify certain "other" policies governing the relationship of the parties. However, Plaintiffs maintain that that the plain language of the 2017 ISA did not permit Color Street to impose the obligation to arbitrate unilaterally. (ECF No. 33-1 at 17-18.) Plaintiffs assert that because the 2017 ISA is the operative ISA with respect to Rodgers and it does not contain an arbitration clause, she is likely to succeed on the merits of the declaratory relief she seeks that she cannot be compelled to arbitrate her claims with Color Street. (*Id*. at 18.) As to McCauley, Plaintiffs contend that he does not recall executing, "clicking," or otherwise agreeing to the terms of the 2019 ISA when he signed up as an Independent Stylist with Color Street. (McCauley Decl. ¶¶ 12-13.) Plaintiffs also contend that "[e]ven assuming arguendo that Rodgers assented to the terms of the 2017 ISA and McCauley

---

[7] Paragraph 15 of the 2017 ISA provides:

> 15. This agreement shall be governed by the laws of the state of New Jersey, and all claims, disputes and other matters between the parties of this agreement shall be brought in the Passaic County Superior Court in Paterson, New Jersey or in the U.S. District Court, in Newark, New Jersey.

(2017 ISA ¶ 15.)

13

assented to the terms of the 2019 ISA, [they] are still not bound to arbitrate claims asserted by or against Color Street." (ECF No. 33-1 at 11-12.) Specifically, Plaintiffs contend that (1) "the conflicting forum selection clauses in the 2021 ISA render them ambiguous that Plaintiffs could not have consented to arbitrate any disputes with Color Street, and (2) the arbitration clause is also not enforceable because it does not clearly advise Plaintiffs of the rights they would be waiving in agreeing to arbitrate disputes with Color Street." (ECF No. 33-1 at 22-24.)

Color Street, on the other hand, maintains that both Rodgers and McCauley agreed to arbitrate their claims, and they are bound by that agreement. (ECF No 43 at 11.) Color Street asserts that when Rodgers applied to join Color Street in 2017, she was required to, and did, check a box online containing an acknowledgment that she read and understood her agreement with Color Street. (*Id.*; Mills Aff. ¶ 10, Ex. 1.) Color Street also contends that, like Rodgers, when McCauley applied to join as an Independent Stylist in 2019, he checked a box online containing an acknowledgment that he read and understood his agreement with Color Street. (*Id.*; Mills Aff. ¶ 13, Ex. 5.) Color Street maintains that "[t]he proof substantiating Plaintiffs' acknowledgments could only be generated if they checked the box acknowledging their acceptance of the terms of the Agreement. (*Id.*) Further, Color Street asserts that Plaintiffs were notified of the amendments to Color Street's ISAs and Policies and Procedures, including the inclusion of clauses mandating arbitration before the AAA, and they assented to these amendments by continuing their engagements with Color Street and accepting compensation as contemplated by the ISA and Policies and Procedures. (*Id.* at 12.) Color Street, therefore, contends that the AAA has jurisdiction to arbitrate its claims and those asserted it. (*Id.*) The Court agrees.

Here, the Court is unconvinced by Plaintiffs' self-serving assertions that "they do not recall" assenting to or otherwise agreeing to the terms of the ISAs. When Plaintiffs applied to join

14

Color Street as Independent Stylists, they executed "clickwrap agreements,"[8] acknowledging that they read and understood their agreement with Color Street. (*See* Mills Aff. ¶ 10, Ex. 1; *id*. ¶ 13, Ex. 5.) Next, contrary to Plaintiffs' argument, the 2017 ISA did permit Color Street to amend or modify its ISA and Policies and Procedures so long as any amendment was communicated "in writing." (*See* Mills Aff., Ex 3, 2017 ISA ¶¶ 2-4, 14; *see also* Ex 4, 2017 2017 ISA ¶ 14.) The record shows that the amendments to the ISA and Policies and Procedures made by Color Street were communicated to Plaintiffs in writing as required by the ISA. Specifically, Color Street notified its Presidential Founders Team, of which Rodgers was a member, in an email dated September 18, 2019, of the changes to the ISA and Policies and Procedures that were later reflected in the 2019 versions of these documents. (*See* Mills Aff., Ex. 11.) Color Street also emailed copies of the updated Agreement and Policies and Procedures to all Independent Stylists on or about October 2, 2019, approximately one month before they took effect on November 2, 2019. (*See* Mills Aff., Ex. 10.)[9] Lastly, it is uncontested that Rodgers separately acknowledged in writing that she was bound by Color Street's Policies and Procedures. (*See* Mills Aff., Ex. 14, Color Street Compliance Notification.) Further, when McCauley joined Color Street in 2019, he agreed to the

---

[8] "A clickwrap agreement requires a computer user to affirmatively manifest her assent to the terms of contract." *ADP, LLC v. Lynch*, Civ. A. No. 2:16-01053, 2016 WL 3574328, at *4 (D.N.J. June 30, 2016), *aff'd*, 678 F. App'x 77 (3d Cir. 2017). Clickwrap agreements satisfy that requirement "by informing the user that taking such action will comprise her assent to the displayed terms." *Id.* (citing *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)). Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of the agreement by clicking "I agree." *Lloyd v. Retail Equation, Inc.*, No. CV 21-17057, 2022 WL 18024204, at *5 (D.N.J. Dec. 29, 2022) (citing *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases)); *see also Mucciariello v. Viator, Inc.*, Civ. A. No. 18-14444, 2019 WL 4727896, at *3 (D.N.J. Sept. 27, 2019); *Liberty Syndicates at Lloyd's v. Walnut Advisory Corp.*, Civ. A. No. 09-1343, 2011 WL 5825777, at *4 (D.N.J. Nov. 16, 2011).

[9] Additionally, Independent Stylists were notified of Color Street's amendments to the ISA and Policies and Procedures via Color Street's App and Virtual Office internal website, (Mills Aff. ¶ 16); on Color Street's Team Brilliance Facebook Page, a private page for Color Street leaders which included Rodgers (*id.* ¶ 18); and during Color Street's periodic calls with its Independent Stylists and Leaders, specifically in an "All Stylist" call that took place on or about October 1, 2019 to discuss the 2019 version of the Agreement and Policies and Procedures (*id.* ¶ 19; *see also id*., Exs. 12, 13).

arbitration clause in the 2019 ISA. (*See* Mills Aff. Ex. 5; 2019 ISA ¶ 19.) Next, the Court finds little merit in Plaintiffs' argument that the arbitration clause is ambiguous and unenforceable because it conflicts with the forum selection clause in the ISA. Courts routinely reject arguments that a forum selection clause conflicts with an arbitration agreement. *See e.g., Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 554 (3d Cir. 2009) (clause requiring a party to submit to the jurisdiction of any court of competent jurisdiction within the United States did "not negate [an] accompanying arbitration clause," but provided "a judicial forum in which a party may enforce arbitration"). Here, Paragraph 18 of the 2021 ISA sets forth in large bold print that the parties agree that "any claim or dispute . . . arising from or relating to [the] agreement . . . shall be resolved by binding arbitration. . . ." (Mills Aff., Ex. 7 at ¶ 18.) In paragraph 22, the 2021 ISA provides that disputes not otherwise subject to the arbitration clause, specifically those seeking injunctive relief which "may not otherwise be available to either party in arbitration," may be litigated in a court of competent jurisdiction in New Jersey. (*Id*. ¶ 22.) The Court finds that the claims Color Street asserts in the arbitration "arise from" and are "related to" the ISA and seek a damages remedy, which the arbitrator has the authority to grant. Moreover, the parties' arbitration proceedings before the AAA commenced in February 2022, an arbitrator was appointed in August of 2022, and Plaintiffs have been actively participating[10] in the proceedings with Color Street since

---

[10] Plaintiffs participated in selecting an arbitrator, arbitration dates, and have probed into the merits of Color Street's claims in the arbitration. Additionally, Plaintiffs' counsel sought to enforce provisions of the 2021 ISA by invoking paragraph 16, which provides for mediation prior to initiating arbitration. (*See* Declaration of Joseph R. Scholz ("Second Scholz Decl.") ¶ 7, Ex. C, ECF No. 43-1.) Plaintiff's counsel specifically claimed that "Color Street's failure to pursue mediation prior to commencing arbitration is a breach of the ISA." (*Id*.) Throughout the arbitration, Plaintiffs have taken part in multiple conferences, resulting in at least three separate orders issued by the arbitrator, including one concerning discovery disputes. (Second Scholz. Decl. ¶ 5.) The arbitrator's first order required that, if Plaintiffs wished to file an application challenging arbitrability, they could do so by September 9, 2022. Id. They did not do so. (*Id*.) Plaintiffs have also acted upon the arbitrator's scheduling order by issuing substantial discovery requests to Color Street in the New Jersey Arbitration that go directly to the merits of the claims in the arbitration. (*Id*. ¶ 6, Exs. A and B.) Plaintiffs' counsel (who is the same counsel for Plaintiffs in this case) has also corresponded directly with the arbitrator seeking rulings concerning, among other things, discovery issues. (*Id*. ¶¶ 6-7.)

then. (*See* Transcript 6:6-12, ECF No 42.) Consequently, the Court finds that both Rodgers and McCauley understood and agreed to be bound by future amendments and modifications to Color Street's ISAs and its Policies and Procedures. As the party seeking a preliminary injunction, Plaintiffs bear the burden of proof that they are likely to succeed on the merits of their argument that Color Street's claims in the arbitration are not subject to a binding and enforceable agreement to arbitrate. The evidence, however, demonstrates that Plaintiffs agreed to arbitrate Color Street's claims. Accordingly, Plaintiffs have failed to show a likelihood of success on the merits.

### B. Irreparable Harm

The movant has the burden of proving a "clear showing of immediate irreparable injury" absent injunctive relief. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Irreparable harm cannot be presumed and "must be established as a separate element, independent of any showing of likelihood of success." *King Pharm. Inc. v. Sandoz, Inc.*, Civ. No. 08-5974, 2010 WL 1957640 at *5, 2010 U.S. Dist. LEXIS 48385 at *5 (D.N.J. May 17, 2010) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 21-22, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008)).

Here, Plaintiffs argue that they did not agree to arbitrate any claims with Color Street and will suffer per se irreparable harm if forced to participate in the Arbitration. Plaintiffs contend that absent the injunctive relief sought, they risk an adverse outcome in proceedings in which they did not agree to participate, in which Color Street seeks tens of millions of dollars, and that may contradict factual findings in both *Color Street I* and *Color Street II*. (ECF No. 33-1 at 26-27.)

In opposition, Color Street argues that Plaintiffs will not suffer irreparable harm if required to proceed to arbitration. (ECF No. 43 at 21.) Specifically, Color Street contends that Plaintiffs agreed to arbitrate, therefore, there is no harm, irreparable or otherwise, in rejecting their attempts to avoid the consequences of their agreements. (*Id*.) Further, Color Street notes that Plaintiffs have

17

been actively participating in the New Jersey Arbitration for several months and have "suffer[ed] no irreparable harm by arbitrating in New Jersey." (*Id*.)  Color Street argues that Plaintiffs "slept on their opportunity to promptly seek to stay the arbitration and, by waiting for several months to do so," and as such, "have demonstrated the complete absence of any harm, let alone irreparable harm." The Court agrees.

The Court finds that Plaintiffs cannot demonstrate that absent a stay of the Arbitration that they will suffer irreparable harm. This is especially true in the instant case where the arbitrator offered to decide the arbitrability issue over a year ago, and Plaintiffs declined. Harm that is irreparable needs to be acted upon promptly with all deliberate speed, not with leisure and a lack of a sense of urgency. Plaintiffs' delay in asserting their objection to arbitration fatally undermines their contention that having to arbitrate Color Street's claims will subject them to any irreparable injury. Indeed, as stated above, to establish irreparable harm, Plaintiffs need to show immediate harm. "To satisfy the irreparable harm element, the moving party must make a clear showing of immediate, irreparable injury or a presently existing threat. . . . The Court of Appeals for the Third Circuit has consistently held that financial or economic injury does not constitute irreparable harm necessary to support an award of injunctive relief." *Cent*. *Jersey Freightliner, Inc. v. Freightliner Corp*., 987 F. Supp. 289, 296 (D.N.J. 1997). Simply put, the record belies Plaintiffs' claims that their participation in the arbitration will result in irreparable harm.

Consistent with Third Circuit precedent, this Court need not analyze every factor of the preliminary injunction analysis because Plaintiff has not established a risk of irreparable harm. *See Beberman v. United States Department of State*, 675 Fed. Appx. 131, 135 (3d. Cir. 2017) (stating that "[b]ecause [plaintiff] has not established a risk of irreparable harm, the District Court did not act outside of its discretion in denying her motion for a preliminary injunction."); *Am. Express*

*Travel Related Servs., Inc. v. Sidamon–Eristoff*, 669 F.3d 359, 374 (3d Cir. 2012) (declining to address the remaining preliminary injunction factors when the plaintiff failed to meet one factor). Because Plaintiff fails to establish a likelihood of imminent, irreparable injury, the Court denies Plaintiff's motion for a preliminary injunction. Further, as the Third Circuit has observed, "[t]he FAA requires courts to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020). Accordingly, the Court finds it appropriate to also stay all proceedings pending completion of arbitration.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction staying or otherwise enjoining the arbitration (ECF No. 33) is **DENIED**. An appropriate Form of Order accompanies this Opinion.

**DATED:** November 3, 2023

JULIEN XAVIER NEALS
United States District Judge